FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 SEP 10 AM 11: 26

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

3:18 cr 119

| UNITED STATES OF AMERICA, | : | No. |
| --- | --- | --- |
| Plaintiff, | : | INDICTMENT THOMAS M. ROSE |
| v. | : | 18 U.S.C. § 666(a)(1)(B) |
| | : | 18 U.S.C. § 1001(a)(2) |
| ROSHAWN WINBURN, | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1346 |
| Defendant. | : | 18 U.S.C. § 2 |

The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. §§ 1343 & 1346]

I. INTRODUCTION

At all times relevant to this Indictment:

1. The City of Dayton was a local political subdivision of the State of Ohio that receives annually millions of dollars in funding from the United States. More precisely, the City of Dayton received in excess of $10,000 in federal assistance from the United States between July 31, 2015 and July 30, 2016. It again received in excess of $10,000 in federal assistance from the United States between July 31, 2016 and July 30, 2017.

2. A commission comprised of five members (hereinafter "the City Commission") governed the City of Dayton with the

assistance of a city manager who oversaw the day-to-day operations of this municipality. In turn, various subdivisions within the government of the City of Dayton reported to the city manager, including an entity known as the Human Relations Council or HRC (hereinafter "HRC").

3. Based on publicly available information:

a. The HRC, among other things: "provide[d] business and technical assistance to minority-owned, woman-owned and small disadvantaged businesses." As part of this process, the HRC "administer[ed] programs aimed at increasing the competitiveness of minority-owned, women-owned, and small disadvantaged businesses including [certain] certification programs." These HRC led or administered certification programs included: the Procurement Enhancement Program ("PEP"); the State of Ohio Disadvantaged Business Enterprise ("DBE"); the State of Ohio Minority Business Enterprise ("MBE"); and the State of Ohio Encouraging Diversity, Growth, and Equity ("EDGE"). Upon obtaining one or more of these certifications, a business or individual became eligible to bid on, or otherwise participate in, certain contracts with the City of Dayton and other government entities.

b. Given its role in administering these certification processes, the HRC and its employees also helped identify and select qualified bidders for a significant portion of contracts that the City of Dayton awarded to private individuals and businesses. For instance, the HRC and its employees assured that bidders satisfied certain requirements, including, not limited to, certification status – imposed upon many contracts with the City of Dayton. Additionally, once a bidder received a contract from the City of Dayton, HRC and its employees monitored the bidder's adherence with certain aspects of the agreement and could cause other subdivisions within the municipality to excuse or otherwise mitigate a bidder's non-compliance issues.

4. Defendant **ROSHAWN WINBURN**, an employee of the City of Dayton, held various positions within the HRC, including, but not limited to, Director of the Minority Business Assistance Center ("MBAC"). Through his position as Director of MBAC, defendant **ROSHAWN WINBURN** exerted control over the process by which businesses and individuals obtained certifications under the various programs described above. Given his role at the HRC, defendant **ROSHAWN WINBURN** also had access to certain confidential, non-public information from the City of Dayton

concerning, among other things, forthcoming demolition projects, anticipated requests for proposal, and other materials concerning planned development and construction projects within the city. Additionally, as Director of MBAC, defendant **ROSHAWN WINBURN** had the ability to influence to whom the City of Dayton awarded contracts and to cause other subdivisions within the municipality to excuse instances in which a business or individual failed to comply with certain aspects of their agreements with the municipality.

II. THE SCHEME TO DEFRAUD AND ITS EXECUTION

5. Between a beginning date unknown, but at least by in or around September 2014, and continuing through in or around September 2017, in the Southern District of Ohio, defendant **ROSHAWN WINBURN** devised and intended to devise a scheme and artifice to defraud and deprive the City of Dayton and its citizens of their right to the honest and faithful services of its public officials and employees through bribery and the concealment of material facts and information.

6. Defendant **ROSHAWN WINBURN** devised this fraudulent scheme to operate, and the fraudulent scheme did operate, as follows:

a. Defendant **ROSHAWN WINBURN** secretly used his official position as a public employee to solicit and accept bribes – namely, gifts, payments, and other things of value – from private individuals and companies seeking to do business with, or having other matter pending before, the City of Dayton. In exchange for soliciting, seeking, and accepting these bribes, defendant **ROSHAWN WINBURN** agreed to take, actually took, and caused to be taken favorable official action from the City of Dayton on behalf of the individuals or companies that paid the bribe to defendant **ROSHAWN WINBURN**.

b. More precisely, through his position with the HRC, including his role as Director of MBAC, defendant **ROSHAWN WINBURN** solicited and accepted cash payments totaling in excess of $20,000 for his own personal benefit. Without the knowledge or consent of his public employer, defendant **ROSHAWN WINBURN** solicited and accepted this money from individuals and companies seeking to do business with, or having other matters pending before, the City of Dayton.

c. In exchange for these cash payments, defendant **ROSHAWN WINBURN** agreed to take, actually took, and caused to be taken favorable official action from the City of Dayton on behalf of the individuals or companies that paid these cash

bribes to defendant **ROSHAWN WINBURN**. These official actions included, but were not limited to:

(1) Without performing full and complete checks concerning the qualifications of an individual or entity to obtain status as an MBE, PEP or DBE, defendant **ROSHAWN WINBURN** improperly provided these certifications to individuals or entities that paid him bribes;

(2) Defendant **ROSHAWN WINBURN** improperly disclosed confidential, non-public information from the City of Dayton concerning, among other things, forthcoming demolition projects, anticipated requests for proposal, and other materials concerning planned development and construction projects within the city. In providing these internal, confidential materials to individuals or companies that paid him bribes, defendant **ROSHAWN WINBURN** intended to provide these individuals or companies with an unfair competitive advantage over other potential bidders on those government contracts or projects.

(3) Defendant **ROSHAWN WINBURN** exerted influence and pressure on other employees of the City of Dayton to excuse, forgive or take less severe action in the event that an individual or business that had paid him a bribe failed to comply with the terms or a condition of contract with the City of Dayton.

d. Defendant **ROSHAWN WINBURN** failed to disclose to the City of Dayton and its citizens his improper relationship with the individuals or companies making illegal personal cash payments to him. Defendant **ROSHAWN WINBURN**, in fact, engaged in steps to hide, conceal, and cover up his activities and the nature and scope of his dealings with the individuals or companies making illegal personal cash payments to him.

III. THE WIRES

7. On or about the dates listed below, in the Southern District of Ohio, and elsewhere, defendant **ROSHAWN WINBURN,** for the purpose of carrying out the above-described scheme to defraud the City of Dayton and its citizens, caused the transmission of the following writings, signs, and signals, by means of wire communication in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE |
|---|---|---|
| ONE | 10/7/2014 | Interstate e-mail from defendant **ROSHAWN WINBURN** to an individual located in the Southern District of Ohio |
| TWO | 10/6/2016 | Interstate e-mail from defendant **ROSHAWN WINBURN** to an individual located in the Southern District of Ohio |
| THREE | 6/22/2017 | Interstate e-mail from defendant **ROSHAWN WINBURN** to an individual located in the Southern District of Ohio |

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNT FOUR

[18 U.S.C. § 666(a)(1)(B)]

8. The allegations contained in Paragraphs 1 through 4 of the Indictment are realleged and incorporated by reference as though set forth in full.

9. Between on or about July 31, 2015 and on or about July 30, 2016, in the District of Southern District of Ohio, defendant **ROSHAWN WINBURN** corruptly solicited, demanded, accepted and agreed to accept a thing of value during that one year period -- namely, United States currency totaling in excess of $5,000 -- from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of the City of Dayton involving $5,000 or more - namely, City of Dayton contracts worth hundreds of thousands of dollars.

In violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT FIVE

[18 U.S.C. § 666(a)(1)(B)]

10. The allegations contained in Paragraphs 1 through 4 of the Indictment are realleged and incorporated by reference as though set forth in full.

11. Between on or about July 31, 2016 and on or about July 30, 2017, in the District of Southern District of Ohio, defendant **ROSHAWN WINBURN** corruptly solicited, demanded, accepted and agreed to accept a thing of value during that one year period -- namely, United States currency totaling in excess of $5,000 -- from a person, intending to be influenced and rewarded in connection with a transaction and series of transactions of the City of Dayton involving $5,000 or more - namely, City of Dayton contracts worth hundreds of thousands of dollars.

In violation of Title 18, United States Code, Section 666(a)(1)(B).

## COUNT SIX

[18 U.S.C. § 1001(a)(2)]

12. On or about August 6, 2015, in the Southern District of Ohio, in a matter within the jurisdiction of the Department of Justice, a department and agency of the executive branch of the United States, defendant **ROSHAWN WINBURN** willfully and knowingly made, and caused to be made, a materially false, fictitious, and fraudulent statement and representation concerning the steps that he performed to qualify an applicant identified herein by the initials K.J. as qualified for PEP and other certifications with the City of Dayton and State of Ohio.

13. More precisely, in response to questions from a special agent and a task force officer of the Federal Bureau of Investigation, defendant **ROSHAWN WINBURN** stated that he personally conducted a site inspection of K.J's business in determining K.J.'s eligibility for PEP and other certifications with the City of Dayton and State of Ohio.

14. At the time that defendant **ROSHAWN WINBURN** made this above referenced statement and representation, he knew that it was false in that, he never performed a site inspection of K.J's business in contravention of City of Dayton policies.

In violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL

/S/ signed
Foreperson

BENJAMIN C. GLASSMAN
United States Attorney

*[signature]*
BRENT G. TABACCHI
Assistant United States Attorney